**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
**SECURITIES AND EXCHANGE COMMISSION,**     :
                                            :
                            **Applicant,**  :     **17-MISC-0318 (AJN)**
        - against -                         :
                                            :     **ECF CASE**
**ANVIL PARTNERS, INC.,**                   :
                                            :
                            **Respondent.** :
-------------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF**
**SECURITIES AND EXCHANGE COMMISSION'S**
**CONTEMPT APPLICATION**


Preethi Krishnamurthy
Sheldon Mui
Securities and Exchange Commission
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0116 (Krishnamurthy)
KrishnamurthyP@sec.gov

Attorneys for Applicant


November 27, 2017

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................... 1

STATEMENT OF RELEVANT FACTS ....................................................................................... 2

     I.        BACKGROUND: ANVIL AND BECK ........................................................................ 2

     II.       THE COMMISSION'S COMPLIANCE EXAMINATION ......................................... 2

     III.     THE COMMISSION'S INVESTIGATIVE SUBPOENA ........................................... 3

PROCEDURAL HISTORY ........................................................................................................... 4

ARGUMENT ................................................................................................................................. 6

     I.        THE COURT SHOULD HOLD ANVIL IN CIVIL CONTEMPT AND
                IMPOSE FINES AND COSTS. ..................................................................................... 6

           A.     The Court Should Hold Anvil in Civil Contempt ............................................. 6

           B.     The Court Should Impose Meaningful Daily Fines on Anvil
                 Until It Complies ............................................................................................... 7

           C.     The Court Should Order Anvil to Pay
                 the Commission's Process Server Costs. ........................................................... 9

     II.       THE COURT SHOULD HOLD BECK IN CIVIL CONTEMPT, IMPOSE
                FINES AND COSTS, AND, IF NECESSARY, ORDER HIS ARREST. ............... 10

           A.     The Court Should Hold Beck in Civil Contempt ........................................... 10

           B.     The Court Should Impose Meaningful Daily Fines on Beck
                 and, If Necessary, Order the U.S. Marshals to Arrest Him. ........................... 11

           C.     The Court Should Order Beck to Pay
                 the Commission's Process Server Costs. ......................................................... 12

CONCLUSION ............................................................................................................................ 12

## TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Guccione*, 470 F.3d 89 (2d Cir. 2006) ...................................................................12

*CBS Broadcasting Inc. v. Filmon.com, Inc.*, 814 F.3d 91 (2d Cir. 2016) ................................10

*Chao v. Koresko*, No. 04-3614 *et al.*, 2005 WL 2521886 (3d Cir. Oct. 12, 2005) .......................8

*Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2d Cir. 1987) ................................8

*EEOC v. Local 638* F.2d 1172 (2d Cir. 1985),
    *aff'd sub nom. Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421 (1986) ............. 6, 7

*Int'l Union v. Bagwell*, 512 U.S. 821 (1994) .................................................................7,8

*Kroetz v. AFT-Davidson Co.*, 102 F.R.D. 934 (E.D.N.Y. 1984) ....................................................4

*Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421 (1986) ...................................9

*NLRB v. Hopwood Retinning Co.*, 104 F.2d 302 (2d Cir. 1939) ........................................... 10, 11

*Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082 (9th Cir. 1983) .....................................4

*SEC v. Aronson,* No. 11 Misc. 201 (JSR) (S.D.N.Y. Oct. 21, 2011), Hearing Tr.,
    attached as Ex. 2 to supporting Decl. of Sheldon Mui. ............................................... 8, 9

*SEC v. Coronati,* No. 13-Misc.-372-P1 (S.D.N.Y. Jan. 17, 2014), Amended Contempt Order,
    attached as Ex. 3 to supporting Decl. of Sheldon Mui .....................................9, 10, 11, 12

*SEC v. Universal Express, Inc.*, 546 F. Supp. 2d 132 (S.D.N.Y. Apr. 18, 2008) .........................12

*Shillitani v. United States,* 384 U.S. 364 (1966) ...............................................................6

*Southern New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123 (2d Cir. 2010) ............................9

*Trustees of I.B.E.W. Local Union No. 488 Pension Fund v. Norland Elec., Inc.*,
    No. 11-CV-709 (CSH), 2016 WL 1060188 (D. Conn. Mar. 14, 2016) ...........................................11

*United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872 (4th Cir. 1947) ....................................4

*Wilson v. United States*, 221 U.S. 361 (1911) ...............................................................10

**Statutes and Rules**

Section 204 of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-4 ...................................................2

Section 209(c) of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-9(c) ......................................6

Local Civil Rule 6.1(d)...................................................................................................................................1

Local Civil Rule 83.6.........................................................................................................................1, 2, 9, 11

The Securities and Exchange Commission ("Commission") respectfully submits this memorandum of law in support of its application for an order to show cause why Respondent Anvil Partners Inc. ("Anvil") and its sole known representative, Jeremy Beck ("Beck"), should not be held in civil contempt. For the reasons set forth below, and in the accompanying Declaration of Sheldon Mui Under Local Civil Rules 6.1(d) and 83.6 in Support of the Securities and Exchange Commission's Contempt Application ("Mui Declaration"), the Commission respectfully requests that the Court enter an order to show cause in the form attached and, following a hearing, hold Anvil and Beck in civil contempt and order the sanctions requested below.

## PRELIMINARY STATEMENT

The Commission is investigating Respondent Anvil, an investment adviser registered with the Commission, for potential overstatements of Anvil's assets under management, among other things. Two months ago, the Court ordered Anvil to produce documents responsive to the Commission's investigative subpoena (or provide a sworn statement describing its efforts to locate such documents) by October 12. The Commission promptly served that Order on Anvil by personally serving it on Beck—Anvil's majority owner, president, chief investment officer, and sole owner, officer, or employee disclosed in Anvil's Commission filings. More than a month has since passed. Neither Beck nor anyone else on Anvil's behalf has produced the required documents or sworn statement or even bothered to contact the Commission.

The Commission therefore seeks an Order to Show Cause, in the form attached, why Anvil and Beck should not be held in contempt for failing to comply with the Court's prior Order. If Anvil fails to appear at the show-cause hearing or to otherwise show cause, the Commission seeks (1) a contempt finding against both Anvil and Beck, (2) daily contempt fines against them both until Anvil complies with the prior Order, (3) an order directing the U.S. Marshal Service to arrest Beck and hold him unless he posts bail conditioned on his appearance before the Court, pursuant to

Local Civil Rule 83.6(a), and (4) an order directing Anvil and Beck to jointly and severally pay the Commission its costs of retaining a process server to serve papers in this contempt proceeding. Absent a contempt finding and sanctions, Anvil will continue to flout the Court's prior Order and succeed in thwarting the Commission's investigation.

STATEMENT OF RELEVANT FACTS

**I.      BACKGROUND: ANVIL AND BECK**

In February 2013, Anvil, a New York corporation with its principal place of business in Buffalo, registered with the Commission as an investment adviser. (Docket No. 4 at ¶ 4.)[1] In May 2016, Anvil filed a publicly-available Form ADV with the Commission (the "2016 Form ADV"). (Docket No. 4 at ¶¶ 5–6.) The 2016 Form ADV identified Beck as Anvil's "majority owner" and "President/Chief Investment Officer" and named no other Anvil employees, officers, or owners. (Docket No. 4 at ¶¶ 6–7.) Anvil's 2016 Form ADV claimed that, as of December 31, 2015, Anvil had "approximately…$51 million in assets under its advisory management." (Docket No. 4 at ¶ 5.)

**II.     THE COMMISSION'S COMPLIANCE EXAMINATION**

From approximately March through May 2017, the Commission's Office of Compliance Inspections and Examinations ("OCIE") conducted an examination of Anvil, under Section 204 of the Investment Advisers Act of 1940  (the "Advisers Act"), to assess Anvil's compliance with the Advisers Act. (Docket No. 5 at ¶¶ 5, 7.) On March 22, 2017, OCIE emailed Beck an initial request, directed to Anvil, for documents and other information (the "Exam Request"). (Docket No. 5 at ¶ 9 & Ex. 1.) The Exam Request sought, among other things, financial records from Anvil, including its balance sheet and general ledger, and information concerning Anvil's client portfolios, including the market value of all securities held in Anvil's client portfolios. (Docket No. 5 at ¶ 9 & Ex. 1.)

---

[1]      "Docket No." refers to the docket entry number for documents entered on the ECF docket for this subpoena enforcement action.

The day after receiving the Exam Request, Beck emailed and called OCIE. (Docket No. 5 at ¶¶ 10–11.) Beck told OCIE that Anvil's assets under management had fallen to approximately $8 million after about August 2016. (Docket No. 5 at ¶ 11.) Beck claimed that he had just learned from his compliance person that Anvil's assets were below the $25 million threshold for Anvil to be eligible for investment adviser registration with the Commission and that he had not been aware of the eligibility requirements. (*Id.*) Beck asked OCIE whether it was still conducting an examination of Anvil. (*Id.*) OCIE responded that it would still conduct the examination, because Anvil had been registered with the Commission during the exam period. (Docket No. 5 at ¶ 12.)

Over the next few days, in response to the Exam Request, Beck began producing documents on Anvil's behalf. (Docket No. 5 at ¶ 13.) On March 27, 2017, Anvil filed a Form ADV amendment for Anvil's fiscal year 2016 and disclosed that its assets under management totaled $8.995 million, as of December 31, 2016. (Docket No. 5 at ¶ 14.)

On April 5, 2017, Beck emailed OCIE and said he was "still working o[n] the financials." (Docket No. 5 at ¶ 15 & Ex. 2.) Although OCIE continued to email Beck afterwards, neither Beck nor anyone else on Anvil's behalf responded to OCIE again. (Docket No. 5 at ¶ 16.) Anvil never produced certain documents the Exam Request sought—including Anvil's financial records, balance sheet, and general ledger—and never provided information concerning Anvil's client securities portfolios. (Docket No. 5 at ¶ 17.)

## III.   THE COMMISSION'S INVESTIGATIVE SUBPOENA

On May 19, 2017, the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony pursuant to statutory authority. (Docket No. 4 at ¶ 9.) Among other things, the Commission is investigating whether Anvil has violated federal securities laws by making materially false statements, including whether Anvil materially overstated its assets under management. (Docket No. 4 at ¶ 8.)

On June 6, 2017, the Commission issued an investigative subpoena to Anvil (the "Subpoena"). (Docket No. 4 at ¶¶ 9–10.) The Subpoena sought documents important to the Commission's investigation, including Anvil's client marketing materials, bank and brokerage account statements, client list, client monthly account statements, trade blotter and general ledger, monthly performance returns and account balances, and client complaints. (Docket No. 4 at ¶ 12.)

On June 22, 2017, the Commission's process server served Anvil by delivering the Subpoena personally to Beck at his home address in Buffalo, New York. (Docket No. 4 at ¶ 11 & Ex. 3.) The Commission later left Anvil several voicemail messages and served Anvil with a letter, but the Commission received no response from Anvil or Beck. (Docket No. 4 at ¶¶ 13–19 & Exs. 4–5.)

## PROCEDURAL HISTORY

On August 21, 2017, the Commission filed an Application in this Court for an order to show cause and an order requiring Anvil to comply with the Subpoena, along with supporting papers.[2]

---

[2]     After filing its Application (Docket No. 1), the Commission learned that Anvil had changed its corporate name several years before. (Mui Decl. ¶¶ 6–7.) Specifically, in 2014, Anvil filed a Certificate of Amendment of the Certificate of Incorporation with the New York State Department of State to change its name from Anvil Partners Inc. to Anvil Investment Partners Inc. (Mui Decl. ¶ 6 & Ex. 1.) Nevertheless, Anvil's 2016 Form ADV filing with the Commission continued to reflect its prior name, Anvil Partners Inc. (Docket No. 4 Ex. 1.) The Commission's Application thus named Anvil Partners Inc. in the caption. (Docket No. 1.) The Application's text, however, made clear that the investment adviser controlled by Beck and registered with the Commission is the respondent in this proceeding. (Docket No. 1 at ¶¶ 1, 6, 10.)

Because there can be no confusion about respondent's identity, an amendment of this proceeding's caption is unnecessary. *See, e.g., United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 873 (4th Cir. 1947) ("As a general rule the misnomer of a corporation in a notice, summons, notice by publication, garnishment citation, writ of certiorari, or other step in a judicial proceeding is immaterial if it appears that it could not have been, or was not, misled." (internal quotation marks and citation omitted)); *Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082, 1085 (9th Cir. 1983) ("[T]he question of whether a defendant is properly in a case is not resolved by merely reading the caption of a complaint. Rather, a party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant."); *Kroetz v. AFT-Davidson Co.*, 102 F.R.D. 934, 937 (E.D.N.Y. 1984) (declining to dismiss complaint where, "despite plaintiff's unintentional use of an improper name, the summons and complaint provided defendant with notice that it was being sued, and defendant was in no way prejudiced by the misnaming"). Nevertheless, the Commission does not object to an amendment of the caption to "SEC v. Anvil Investment Partners Inc. f/k/a Anvil Partners Inc.," if Anvil so requests.

(Docket Nos. 1, 3–5.) On August 23, 2017, the Court entered the Order to Show Cause requiring Anvil to show cause in writing, by September 6, 2017, why the Court should not issue an order directing Anvil to comply with the Subpoena. (Docket No. 9 at 1–2.) The Order also required the Commission to serve the Order and the supporting papers on Anvil "or any of its officers or agents—including Jeremy Beck" by August 25, 2017. (Docket No. 9 at 2.)

On August 29, 2017, at the Commission's request, the Court issued an Adjournment Order. (Docket No. 11.) The Order extended (1) the Commission's time to serve Anvil "or any of its officers or agents—including Jeremy Beck" until September 8, 2017, and (2) Anvil's time to show cause until September 20, 2017. (*Id.*)

On September 7, 2017, the Commission filed its process server's declaration of service. (Docket No. 12.) The proof of service showed that the Commission had served the Adjournment Order, Order to Show Cause, and supporting papers on Anvil by personally serving Beck. (*Id.*)

On September 21, 2017, after Beck failed to file any response by its September 20 deadline, the Court entered its Order enforcing the Subpoena (the "Enforcement Order"). (Docket No. 13.) The Enforcement Order states:

> IT IS HEREBY ORDERED that Respondent Anvil produce all documents responsive to the Subpoena within its possession, custody, or control to the Commission no later than October 12, 2017. If Anvil does not have documents in its possession, custody, or control that are responsive to the Subpoena or to any requests contained in the Subpoena, Anvil shall submit a sworn statement to the Commission describing the efforts it made to locate responsive documents and the results of those efforts, no later than the date set forth above in paragraph (a). In the event that Anvil does not produce the documents or statements described in paragraphs (a) or (b) by the date specified above in those paragraphs, the Commission will have established a prima facie case of civil contempt against Anvil for its failure to comply with the Order directing it to produce documents, and Anvil may be held in civil contempt for failure to comply with that Order without further notice or hearing.

(Docket No. 13.)

5

The Enforcement Order required the Commission to serve the Order on Anvil "or any of its officers or agents—including Jeremy Beck" by September 27, 2017. (*Id.*) On September 25, 2017, the Commission's process server served Anvil with the Enforcement Order by personally handing it to Beck, as set forth in the process server's declaration of service. (Docket No. 14.)

Neither Beck nor anyone else acting on Anvil's behalf has produced any documents or submitted a sworn statement to the Commission in response to the Enforcement Order. (Mui Decl. ¶ 14.) Neither Beck nor anyone else acting on Anvil's behalf has contacted the Commission in response to the Enforcement Order. (Mui Decl. ¶ 15.)

## ARGUMENT

I.   **THE COURT SHOULD HOLD ANVIL IN CIVIL CONTEMPT AND IMPOSE FINES AND COSTS.**

A.   **The Court Should Hold Anvil in Civil Contempt.**

District courts have "inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States,* 384 U.S. 364, 370 (1966). The Advisers Act expressly authorizes district courts to hold in contempt anyone who fails to comply with a court order enforcing compliance with a Commission investigative subpoena:

> In case of contumacy by, or refusal to obey a subpoena issued to, any person, the Commission may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on…in requiring…the production of books, papers…and other records…. And such court may issue an order requiring such person…to produce records…and any failure to obey such order of the court may be punished by such court as a contempt thereof.

15 U.S.C. § 80b-9(c).

A party may be held in civil contempt if the applicant shows that "the order being enforced is clear and unambiguous, the proof of noncompliance is clear and convincing, and the [respondent] ha[s] not been reasonably diligent and energetic in attempting to accomplish what was ordered." *EEOC v. Local 638*, 753 F.2d 1172, 1178 (2d Cir. 1985) (internal quotation marks and citation

omitted), *aff'd sub nom. Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421 (1986). No

showing of willful disobedience is necessary for a finding of civil contempt. *Id.*

  The Commission has satisfied each prong of the civil contempt standard with respect to

Anvil. First, the Enforcement Order is clear and unambiguous. It ordered Anvil to produce

documents responsive to the Commission's investigative subpoena (or provide a sworn statement

detailing its unsuccessful efforts to do so) by October 12. (Docket No. 13.) The Enforcement Order

also clearly and unambiguously put Anvil on notice that it could be held in civil contempt if it did

not comply with the Enforcement Order. (*Id.*)

  Second, the proof of Anvil's non-compliance is clear and convincing. The Commission

timely served Anvil with the Enforcement Order on September 25, 2017 by personally serving it on

Beck—Anvil's majority owner, president, and chief investment officer. (Docket No. 14; Docket No.

4 at ¶¶ 6–7.) Yet Anvil never produced documents or otherwise responded to the Enforcement

Order. (Mui Decl. ¶¶ 14–15.)

  Finally, Anvil has not been energetic or diligent in attempting to comply with the

Enforcement Order. Anvil has not only failed to produce a single document or sworn statement in

response to the Enforcement Order but has also failed even to communicate with the Commission

about the Enforcement Order. (Mui Decl. ¶¶ 14–15.)

  **B.** **The Court Should Impose Meaningful Daily Fines on Anvil Until It Complies.**

  "[S]anctions in civil contempt proceedings may be employed for either or both of two

purposes: to coerce the [contemnor] into compliance with the court's order, and to compensate the

complainant for losses sustained." *Local 28*, 478 U.S. at 443 (internal quotation marks and citations

omitted). "The paradigmatic coercive, civil contempt sanction…involves confining a contemnor

indefinitely until he complies with an affirmative command." *Int'l Union v. Bagwell*, 512 U.S. 821, 828

(1994). "A close analogy to coercive imprisonment is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order." *Id.* at 829.

Before imposing coercive sanctions for civil contempt, courts must "explicitly consider (1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him." *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987). These factors all support the imposition of daily fixed or escalating fines until Anvil responds to the Enforcement Order to coerce Anvil into complying with the Order. First, Anvil's continued contumacy has hindered the Commission's investigation into Anvil's potential violations of the Advisers Act. By flouting the Court's Enforcement Order, Anvil has avoided producing documents critical to the Commission's investigation. Second, Anvil is likely to respond to the Enforcement Order once ordered to pay daily fines until it complies. Finally, Anvil claims to have almost $9 million in client assets under management (Docket No. 5 at ¶ 14), and Anvil's management fees should therefore allow it to pay meaningful fines until it complies with the Enforcement Order.

Indeed, courts have not hesitated to impose significant—and even escalating—fines on contemnors who have failed to comply with court orders enforcing agency administrative subpoenas. *See, e.g., Chao v. Koresko*, No. 04-3614 *et al.*, 2005 WL 2521886, at *6–7 (3d Cir. Oct. 12, 2005) (affirming district court's imposition of "a coercive fine of $250 per day" on contemnors who failed to produce documents responsive to administrative subpoenas after the district court had issued an order enforcing the subpoenas); *SEC v. Aronson,* No. 11 Misc. 201 (JSR) (S.D.N.Y. Oct. 21, 2011), Hearing Tr. at 18–19, attached as Ex. 2 to Mui Decl. (after respondent had failed to comply with subpoena enforcement order, imposing on the first day of future noncompliance a

$10,000 contempt fine, doubling every additional day of noncompliance, until the fine totaled more than $1 million on the seventh day and "consider[ing] criminal contempt" thereafter).

### C. The Court Should Order Anvil to Pay the Commission's Process Server Costs.

The second purpose of civil contempt sanctions is "to compensate the complainant for losses sustained." *Local 28*, 478 U.S. at 443 (internal quotation marks and citation omitted). The Commission's expenses of litigating the contempt proceeding—here, the Commission's costs of hiring a process server to personally serve Anvil with papers in this contempt proceeding—are compensable civil contempt sanctions. *Id.* at 444 n. 23 ("[T]he assessment of attorney fees and expenses compensated respondents for costs occasioned by petitioners' contemptuous conduct."); *Southern New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 145–46 (2d Cir. 2010) (holding that district court did not abuse its discretion in ordering contemnor to pay fees and costs plaintiff had incurred in litigating its motion for civil contempt); *cf.* Local Civil Rule 83.6(a) ("The affidavit upon which such…order to show cause is based shall set out with particularity the misconduct complained of, the claim, if any, for damages occasioned thereby and such evidence as to the amount of damages as may be available to the moving party.").

The Court should therefore order Anvil, jointly and severally with Beck, to pay the Commission its costs of serving Anvil in this contempt proceeding (not the past costs of serving Anvil with papers in connection with the subpoena enforcement application). If Anvil had simply complied with the Enforcement Order, the Commission would not have had to litigate Anvil's contempt and pay a process server to serve Anvil with contempt papers. Serving Anvil with these and further contempt papers will likely cost the Commission between $250 and $750, based on the Commission's prior costs of serving Anvil. (Mui Decl. ¶ 18.) Anvil should be ordered to pay the full cost, once the Commission submits an invoice to the Court. *See SEC v. Coronati,* No. 13-Misc.-372-P1, Amended Contempt Order at 2 (Jan. 17, 2014), attached as Ex. 3 to Mui Decl. (ordering

contemnor, who had failed to comply with a court order enforcing Commission investigative

subpoena, to pay the Commission's process server costs of $4,812).

## II.     THE COURT SHOULD HOLD BECK IN CIVIL CONTEMPT, IMPOSE FINES AND COSTS, AND, IF NECESSARY, ORDER HIS ARREST.

### A.     The Court Should Hold Beck in Civil Contempt.

"A command to a company is in 'effect a command to those who are officially responsible

for the conduct of its affairs.'" *CBS Broadcasting Inc. v. Filmon.com, Inc.*, 814 F.3d 91, 100 (2d Cir. 2016)

(quoting *NLRB v. Hopwood Retinning Co.*, 104 F.2d 302, 305 (2d Cir. 1939) (quoting *Wilson v. United*

*States*, 221 U.S. 361, 376 (1911))). "Even when corporate officers are not a party to the original

action, if they 'prevent compliance or fail to take appropriate action within their power for the

performance of the corporate duty, they, no less than the corporation itself, are guilty of

disobedience, and may be punished for contempt.'" *CBS Broadcasting*, 814 F.3d at 95, 100 (quoting

*Hopwood Retinning*, 104 F.2d at 305) (affirming district court's contempt finding against corporate

defendant's chief executive officer where officer "both had the power to force [corporation] to

comply and failed to 'take appropriate action within his power'").

The Court should hold Beck in civil contempt for failing to comply with the Enforcement

Order on Anvil's behalf because Beck had the power to force Anvil to comply and failed to exercise

that power. Beck serves as Anvil's majority owner, president, and chief investment officer and, to

the Commission's knowledge, as Anvil's sole employee and officer. (Docket No. 4 at ¶¶ 6–7.) When

the Commission's OCIE sent Anvil a document request earlier this year during a compliance

examination, Beck contacted OCIE in response, spoke and emailed with the OCIE staff, and

produced some documents on Anvil's behalf. (Docket No. 5 at ¶¶ 9–13, 15.) Beck therefore has the

power to force Anvil to comply with the Enforcement Order. Furthermore, Beck had notice of the

Enforcement Order: it explicitly named Beck as an officer or agent of Anvil on whom the

Commission could serve the Order, and the Commission indeed personally served Beck on Anvil's

behalf. (Docket Nos. 13 & 14.) Yet Beck has failed to exercise his power by complying with the

Enforcement Order. (Mui Decl. ¶ 14.) Beck's failure to comply should subject him to a contempt

finding. *See Hopwood Retinning*, 104 F.2d at 305 ("As an important officer and agent of the Hopwood

Company, Hopwood should be held [in contempt] for his company's non-compliance with the

court's order."); *Trustees of I.B.E.W. Local Union No. 488 Pension Fund v. Norland Elec., Inc.*, No. 11-CV-

709 (CSH), 2016 WL 1060188, at *3 (D. Conn. Mar. 14, 2016) ("[A]lthough Norris is not a named

party in this action, the record supports entry of an order for civil contempt against him.").

> **B.      The Court Should Impose Meaningful Daily Fines on Beck and, If Necessary,
> Order the U.S. Marshals to Arrest Him.**

For the reasons described above in Section I.B, the Court should order Beck to pay

meaningful daily fines until he complies with the Enforcement Order. Beck's majority ownership of

Anvil, an investment adviser that Beck has claimed has almost $9 million of client assets under

management, suggests that Beck has the financial means to pay a daily contempt fine. (Docket No. 4

at ¶¶ 6–7; Docket No. 5 at ¶ 14.)

In addition, if Beck fails to appear for any contempt hearing set forth in the proposed order

to show cause, the Court should order the United States Marshals Service to arrest Beck. Local Civil

Rule 83.6(a) expressly provides for such an arrest:

> If an order to show cause is sought, such order may, upon necessity shown,
> embody a direction to the United States marshal to arrest the alleged
> contemnor and hold such person unless bail is posted in an amount fixed by
> the order, conditioned on the appearance of such person in all further
> proceedings on the motion, and further conditioned that the alleged
> contemnor will hold himself or herself amenable to all orders of the Court
> for surrender.

Local Civil Rule 83.6(a); *see also SEC v. Coronati*, Amended Contempt Order at 3, attached as Ex. 3 to

Mui Decl. (after contemnor failed to appear for contempt hearing pursuant to order to show cause,

ordering "the United States Marshal…to arrest [contemnor]…[and] hold him unless bail is posted in

the amount of $10,000, conditioned on [his] appearance before this Court on January 23, 2014, at

11:00 a.m. and all further contempt proceedings in this action...."); *Armstrong v. Guccione*, 470 F.3d 89, 93 (2d Cir. 2006) (affirming orders incarcerating civil contemnor for failure to comply with court orders to turn over corporate records and assets to receiver following Commission action against contemnor); *SEC v. Universal Express, Inc.*, 546 F. Supp. 2d 132, 142 (S.D.N.Y. Apr. 18, 2008) (holding defendant in civil contempt and ordering his incarceration until he complied with court order to pay money judgment).

      **C.**      **The Court Should Order Beck to Pay the Commission's Process Server Costs.**

For the reasons described in Section I.C, the Court should order Beck to pay the Commission, jointly and severally with Anvil, the amount of the Commission's process server fees for serving Anvil (through Beck) with papers in this contempt proceeding.

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court order Anvil and Beck to show cause why they should not be held in contempt and, following a hearing, hold them in contempt and order the sanctions and costs requested above.

Dated: November 27, 2017
       New York, New York

SECURITIES AND EXCHANGE COMMISSION

By:

Preethi Krishnamurthy
Sheldon Mui
Attorneys for Applicant
Securities and Exchange Commission
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0116 (Krishnamurthy)
KrishnamurthyP@SEC.gov